UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS LAVELLE BROWN,

        Petitioner,                  Case No. 1:16-cv-1067

v.                                          Honorable Robert J. Jonker

SHERMAN CAMPBELL,

        Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Darrius Lavell Brown presently is incarcerated at the Carson City Correctional Facility. Following a jury trial in the Muskegon County Circuit Court, Petitioner was convicted of assault with intent to murder, MICH. COMP. LAWS § 750.83, assault with intent to do great bodily harm less than murder (GBH), MICH. COMP. LAWS § 750.84, being a felon in possession of a firearm (felon in possession), MICH. COMP. LAWS § 750.224f, and three counts of possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. On April 14, 2014, Petitioner was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to 24 to 40 years' imprisonment on the assault with intent to murder conviction, 20 to 40 years' imprisonment on the GBH conviction, 3 to 15 years' imprisonment on the felon-in-possession conviction, and 5 years's imprisonment on each of the three felony-firearm convictions. The sentences for assault with intent to murder, GBH and felon in possession are concurrent with one another, but consecutive to the remaining sentences on the convictions for which Petitioner was on parole at the time he committed the offenses. The felony-firearm sentences are consecutive to and preceding his sentences for the convictions of assault with intent to murder, GBH, and felon in possession.

The following recitation of the facts is taken from the opinion of the Michigan Court of Appeals:

> According to the evidence introduced at trial, on May 20, 2013, defendant shot his girlfriend, Precious Buchanan, in the neck and back. The altercation occurred after defendant learned that Buchanan had visited the home of her ex-boyfriend's mother. Specifically, Buchanan and her sister, Daja Williams, arrived at defendant's home with their children after looking at some houses and visiting the woman in question, at which time defendant playfully carried Buchanan inside while Williams waited outside in the car with the children. Once inside, defendant's

demeanor changed. He grew violent, he pushed Buchanan, and he eventually carried Buchanan upstairs to his bedroom, where he continued to "push [her] around." Williams heard yelling, and she went inside to investigate. Shortly after Williams arrived in the bedroom, defendant pulled a gun from his pocket, Buchanan said to "run," and both Williams and Buchanan ran from the room, down the stairs, and out of the house. Defendant ran after the women, firing his gun multiple times, and he succeeded in shooting Buchanan in the neck and back. Williams ran to a nearby daycare, where she called a relative for help, and Buchanan drove herself to the hospital, where she was treated for her injuries. Defendant was convicted as noted above.

*People v. Brown*, No. 322995, 2015 WL 8538925, at *1 (Mich. Ct. App. Dec. 10, 2015).[1]

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, raising four grounds for relief:

   I.   Trial court abused its discretion in scoring OV 3[.]

   II.  Ineffective assistance of counsel where counsel failed to investigate and cross examine[.]

   III. Trial court abused its discretion in scoring OV6[.]

   IV.  Trial court abused its discretion in scoring PRV7[.]

(Pet., ECF No. 1, PageID.1.) In an unpublished opinion issued on December 10, 2015, the court of appeals denied all appellate grounds and affirmed the convictions and sentences. Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same four issues. The supreme court denied leave to appeal on July 26, 2016.

Petitioner filed the instant habeas action on or about August 22, 2016, raising the same four grounds presented to and rejected by the Michigan appellate courts.

---

[1] Petitioner does not contend that the Michigan Court of Appeals misstated the evidence at trial. Petitioner argues, however, that his attorney should have discovered and presented additional evidence. The Court will address Petitioner's factual concerns when it addresses Petitioner's claim of ineffective assistance of trial counsel.

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo*

review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

  I.  <u>Sentencing Errors</u>

In Grounds I, III, and IV of his habeas application, Petitioner contends that the trial court erred in scoring Offense Variable (OV) 3, OV 6, and Prior Record Variable (PRV) 7. He argues that the misscoring of the sentencing guidelines resulted in a denial of his due process rights.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief);

*Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987). Further, to the extent that Petitioner argues that the court improperly construed its own law, the Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Although state law errors generally are not reviewable in a federal habeas proceeding, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in

part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court). Accordingly, the Petitioner's first, third and fourth habeas grounds are either noncognizable or meritless.

II.     Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel was ineffective in failing to investigate the criminal records of the female complainants and failed to cross-examine the women on whether they had received leniency in exchange for their testimony against Petitioner. In addition, Petitioner argues that his attorney lacked a trial strategy, thereby depriving Petitioner of an adequate defense.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Applying the correct constitutional standard, the Michigan Court of Appeals thoroughly discussed Petitioner's claims of ineffective assistance of counsel:

> Finally, defendant also argues on appeal that defense counsel was ineffective for failing to adequately investigate the victims' criminal histories and the possibility that they received leniency in exchange for their testimony, for failing to pursue a claim of self-defense, for failing to sufficiently cross-examine the victims about their arrests for assault charges and their assaultive conduct toward defendant on the day in question, and, more generally, for not having a trial strategy. Specifically, defendant contends on appeal that the women had assault charges in their criminal histories unrelated to the events at issue in this case and that, on the day in question, he shot at the women in self-defense after they attacked him using "claw-like

weapons in the form of fake fingernails." Defendant maintains that counsel performed deficiently by failing to investigate and pursue this defense at trial, and that counsel's failure prejudiced defendant.

Defendant failed to move for a new trial or a [] hearing [under *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973)], meaning that defendant's claim of ineffective assistance of counsel is unpreserved. *People v. Petri*, 279 Mich. App 407, 410; 760 NW2d 882 (2008). Because defendant failed to develop an evidentiary record in the trial court, our review is limited to mistakes apparent on the record. *People v. Wilson*, 242 Mich. App 350, 352; 619 NW2d 413 (2000).

To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) "his attorney's performance fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that the outcome [of trial] would have been different but for counsel's errors." *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Further, the defendant bears the burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses, and a "substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation omitted). However, defense counsel also enjoys "great discretion in the trying of a case—especially with regard to trial strategy and tactics." *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy[.]" *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). This Court will not substitute its judgment for counsel on matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

In this case, defendant first contends that counsel's investigation failed to address the victims' criminal histories and the possibility that their "testimony was bartered" in exchange for leniency. Defendant also claims that counsel should have cross-examined the victims with respect to the issue of leniency. However, nothing in the record supports defendant's claim that counsel conducted an inadequate investigation, that the victims had been arrested on assault charges, or that they received leniency of any kind in exchange for their testimony. Consequently, defendant has failed to establish the factual predicate of his claim. See *Hoag*, 460 Mich at 6.

We note that defendant filed an untimely motion for a remand, which this Court denied, and that he impermissibly attempts to expand the record on appeal by attaching Internet Criminal History Access Tool (ICHAT) records to his brief on appeal to substantiate his claims regarding the victims' criminal histories. However, because these records are not part of the lower court record, they need not be considered. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001). Moreover, even considering these documents, there is still no evidence that either of the victims received leniency in exchange for their testimony against defendant. The documents merely show that the women pled nolo contendere to the charges at issue, and there is nothing indicative of leniency in exchange for their testimony against defendant. Therefore, the fact remains that defendant has not established that counsel's investigation of the victims was objectively unreasonable in this respect. See *Grant*, 470 Mich at 485-486.

Next, defendant argues that defense counsel was ineffective for failing to pursue a claim of self-defense, and to specifically cross-examine the victims regarding their "rapier-like" acrylic nails. As noted, the questioning of witnesses is presumed to be a matter of trial strategy, *Petri*, 279 Mich App at 413, and defendant has not overcome the presumption that counsel's decisions were a matter of trial strategy. Quite simply, the record does not indicate that a self-defense theory was viable in this case or that counsel was ineffective for failing to pursue such an unsubstantiated defense. Cf. *Chapo*, 283 Mich App at 371-372.

Relevant to defendant's claim of self-defense, an individual may employ deadly force if that individual is not engaged in the commission of crime, he or she has no duty to retreat, and the individual "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1). See also *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). Given that defendant used a gun and succeeded in shooting Buchanan as she fled, it is plain that defendant employed "deadly force." See *People v Hooper*, 152 Mich App 243, 247; 394 NW2d 27 (1986). Defendant now claims on appeal that his conduct was justified because the victims attacked him while wearing acrylic nails. In actuality, the record plainly shows that Buchanan was shot in the back as she and Williams fled. We see no basis on which defendant could honestly and reasonably have believed himself in imminent danger from fleeing, unarmed individuals. Further, in defendant's statements to the police, he never indicated that he acted in self-defense. In fact, defendant stated that "he shot the gun to scare the girls." In other words, there was no indication that defendant believed he was in imminent danger, and a self-defense theory was not applicable to the case. Thus, counsel was not objectively unreasonable for failing to pursue this defense. Cf. *Chapo*, 283 Mich App at 371-372.

Next, defendant more generally claims that counsel lacked a trial strategy. Defendant abandoned this claim by giving the issue cursory treatment and failing to explain or rationalize his position. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Moreover, our review of the record reveals that this claim is clearly without merit. At trial, counsel argued that defendant could not be convicted of anything in relation to Williams because she was out of the room before defendant fired his weapon. With respect to Buchanan, defense counsel's strategy was to argue that defendant lacked the intent to kill. Counsel also successfully requested M Crim JI 17.4, which addresses circumstances mitigating an unlawful assault, and counsel claimed that defendant was emotionally excited after learning that Buchanan had been at her exboyfriend's mother's house. In short, defense counsel had a strategy. While defendant now complains about counsel's performance on appeal, "a particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Matuszak*, 263 Mich App at 61.

We note briefly that, even supposing counsel's performance fell below an objective standard of reasonableness, defendant has not shown prejudice. The evidence established that defendant shot at the unarmed victims as they fled, and he succeeded in striking Buchanan in the neck and back. In light of this substantial evidence supporting defendant's convictions, defendant has not shown that, but for counsel's errors, there was a reasonable probability of a different outcome. See *Grant*, 470 Mich at 486.

*Brown*, 2015 WL 8538925, at **4-6.

The state court's reasoning was patently reasonable. Petitioner failed to properly present any evidence supporting his assertion that trial counsel neglected to investigate the criminal histories of the victims or that the victims received any leniency for their testimony. This Court on habeas review is limited to the record before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011). In the absence of record evidence, Petitioner fails to overcome the presumption that counsel's investigation and cross-examination was competent. *Strickland*, 466 U.S. at 689.

In addition, as the court of appeals recognized, any claim by Petitioner that he had been scratched by the victims' sharp nails would not have rendered Petitioner's shooting of a handgun reasonable self-defense – especially given that the victims were fleeing the scene when

Petitioner fired and struck one of them in the back. As a result, reliance on a theory of self-defense would have been futile.

Finally, Petitioner fails to demonstrate that counsel's overall strategy was unreasonable. As the state court recognized, an attorney acts reasonably when he directs his trial strategy toward mitigating the level of Petitioner's responsibility, rather than toward attempting to excuse it with a frivolous claim of self-defense. Petitioner's assertions utterly fail to overcome presumption of reasonableness that attaches to defense counsel's strategy. *Id.*

For all these reasons, the state court's determination on this issue was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v.*

*Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:      September 21, 2016            /s/ Robert J. Jonker
                                                                                         ROBERT J. JONKER
                                                                                         CHIEF UNITED STATES DISTRICT JUDGE